WESTERN DIS-
September,1841.

PATIN
vs.
BLAIZE, JR.

The surety cannot appeal from a judgment against him and his principal, which the latter has already had reversed on appeal. The release of the principal in the judgment, released the surety, although not a party to that appeal.

---

## PATIN vs. BLAIZE, Jr.

APPEAL FROM THE COURT OF THE FIFTH DISTRICT, FOR THE PARISH OF ST. LANDRY, THE JUDGE OF THE SEVENTH PRESIDING.

The plaintiff is not bound to show a perfect title in order to recover against a trespasser without title, provided he has the actual possession. When a civil possession is relied on alone, the title must be *prima facie*, such as would be translative of property.

It is essential to the validity of an entry that the land intended to be appropriated, should be so described as to give notice of the appropriation to subsequent locators.

The courts will not assess damages on a plea in re-convention, in a suit by injunction and sequestration. The party must take his remedy on the bonds given by the plaintiff in injunction.

Damages for the wrongful suing out an injunction may be claimed in the same suit, under the provisions of the act of 1831, in cases embraced by this act; but from its wording it seems to apply particularly where judgments are enjoined.

This is an action of trespass claiming damages from the defendant, for cutting cypress and making *Pieux* on plaintiff's land.

The plaintiff alleges he is owner of 12 arpents front with the usual depth on the north side of the Bayou Plaquemine *Brulée,* the head waters of the river Mermentou, in the parish of St. Landry, and that the defendant has entered on said land without right or title, and between the months of May and August in the year 1839, cut down cypress trees and converted them to his own use, and committed various other acts of waste to his damage $350. He prays for an injunction prohibiting the defendant from trespassing further on his land, and for $350 in damages already suffered, and that the *Pieux* and timber cut down be sequestered.

The defendant pleaded a general denial; and averred that the injunction was wrongfully sued out; that he had been stopped in his business as a *Pieux* getter for more than twelve months, to his damage $500. He prays that the injunction be dissolved with 10 per cent. interest, and 20 per cent. damages, on the amount of the bond against plaintiff and his surety.

Upon these pleadings and issues the cause was tried.

The plaintiff failed to make out his claim or title to the premises used and occupied by the defendant, or to show in any way that the latter was trespassing or occupying his land.

There was judgment dismissing the suit, from which the plaintiff appealed.

*Crow,* for the plaintiff and appellant.

*T. H. Lewis,* contra.

*Garland, J.* delivered the opinion of the court.

The plaintiff alleges he is the owner and proprietor of a

tract of land "containing twelve arpents front, on the north side of the Bayou Plaquemine, of the head waters of the river Mermentou," and that he and those under whom he claims have had quiet possession of the same for more than thirty years. He further represents, that the defendant has gone upon the land, knowing the same to belong to him, and has' committed various acts of trespass and waste by cutting down valuable cypress and other trees, making *Pieux* and boards thereof, and converting them to his own use, to his damage $350. He prays for judgment for the damages, that an injunction may issue to restrain the defendant from proceeding in his waste and trespasses, and that the timber, *Pieux* and boards on the land be sequestered, the plaintiff claiming them as his property. These writs were accordingly issued.

The defendant denies the allegations in the petition, and further says, that by the suing out of the writs of injunction and sequestration he has been prevented from pursuing his business, which is that of a *lumber-man* and *Pieux getter*, for more than twelve months, to his damage $500, which he claims in reconvention. He therefore prays for a dissolution of the injunction and sequestration, with ten per cent. interest, and twenty per cent. damages on the amount of the injunction and sequestration bond, both against the plaintiff and his surety, and the $500 damages against the former.

It is not shown by the evidence that the plaintiff ever was in *actual* possession of the land on which it is shown the defendant committed the waste and trespasses alleged; nor does it appear that those under whom he claims have had *actual* possession for many years, though the original grantee, Pierre Guidry, had possession for a long time previous to his sale to Joseph Guidry. He sold a tract of land purporting to be the one in question to said Joseph, in the year 1823, who does not appear ever to have had actual possession; the heirs of the latter sold to plaintiff as is attempted to be shown.

The plaintiff, to show that he had a title to and civil possession of the land, by virtue of it, offerred in evidence the *proces*

*verbal* of a probate sale of a portion of the succession of Joseph Guidry, made by the Judge of the parish of St. Landry, by which it appears the plaintiff purchased in 1837 a tract of land *having twelve arpents front by forty in depth, lying on the West bank of the East Fork of the Bayou Plaquemine Brulée, bounded on the upper side by land of Jean Mouton.* It is admitted that the East Fork of the Bayou Plaquemine Brulée is distant nine or ten miles from the place where the trespass was committed. The plaintiff then offered a sale made in 1823, from Pierre to Joseph Guidry, of a tract of land having twelve arpents front by forty deep, bounded on both sides by vacant land, "*face a la rive droite de la Rivière Mermentou.*" He then offered an inchoate title from the Spanish government, to Pierre Guidry, confirmed by the United States, for twelve arpents front on the *West Bank of the Bayou Plaquemine Brulée*, by forty in depth, bounded on each side by vacant lands, but lying opposite to a tract on the East side of the same Bayou, on which Pierre Guidry resided. On this land it is admitted the trespass was committed. The plaintiff further showed that this part of the *Plaquemine Brulée* was generally called the *Nementou*, it being within a few miles of the junction with that River (properly called Mermentou.) He further showed by the Register of the Land Office at Opelousas, that Pierre Guidry never had, as far as the records of his office showed, any other tract of land in that section of the parish of St. Landry, other than the two situated on the East and West banks of the Plaquemine Brulée, one owned now by Jean Mouton's heirs, and the other claimed by plaintiff. It is clearly shown by the surveys made by the United States, that the claim of Pierre Guidry is located on and covers the place where the trespass was committed, but the defendant says, that is not the tract of land purchased by plaintiff. He says the calls and boundaries in the sale from Joseph Guidry's heirs to plaintiff, are entirely different from those in the grant to Pierre Guidry, and widely different from those in the sale from Pierre to Joseph Guidry. He shows

WESTERN DIS. *September*,1841.

PATIN
*vs.*
BLAIZE, JR.

that the East Fork of the Plaquemine Brulée is a well known stream, and the parish surveyor testifies, if he had been called on to locate the claim of Pierre Guidry, he should not have placed it on that Bayou.

*The plaintiff is not bound to show a perfect title in order to recover against a trespasser without title, provided he has the actual possession. When a civil possession is relied on alone, the title must be prima facie, such as would be translative of property.*

Upon this evidence, the question arises, is there sufficient certainty in the plaintiff's title to enable him to maintain this action. His counsel says he is not bound to show a title perfect in all respects to recover against a trespasser without title; this is true, if actual possession accompanies the apparent title; but when a civil possession is relied on alone, the title must at least be *prima facie*, such as would be translative of property, and sustain a plea of prescription, if one were to be based on it.

Suppose the plaintiff were sued for the *locus in quo*, and should plead the prescription of ten years based on the sales from Pierre to Joseph Guidry, and from the latter to him (plaintiff,) we do not believe, as at present advised, the plea could be sustained.

We think there should be a reasonable certainty in the description of land when transferred, such as will enable a person by using reasonable care and diligence to find the particular place. If the description will suit another place better, or equally as well as the one claimed, it is defective.—1 Wheaton 130, 141; 3 Cond. Rep. 513, 520; 2 Wheaton 206; 4 Cond. Rep. 84. If the calls of an entry do not fully describe the land, but furnish enough to enable the court to complete the location by the application of admissible testimony, they will complete it, That is, if a tract of land have certain material calls sufficient to describe it, and other calls less material and incompatible with the essential calls, the latter may be disregarded—6 Cranch 148; 2 Cond. Rep. 336. If a great and prominent object, immoveable and durable in itself, and of general notoriety be called for in a location, that object must fix and locate the claim, although other minor and temporary objects, to be discovered only by a strict and successful search, might prove the locator really intended to take other land.—9

Cranch 164; 3 Cond. Rep. 331. It is essential to the validity of an entry, that the land intended to be appropriated should be so described as to give notice of the appropriation to subsequent locators.—2 Wheaton 206, 316; 4 Cond. Rep. 84, 132. A cabin and a marked tree in a country full of cabins and marked trees, cannot control a call made for an object of general notoriety.—9 Cranch 164. All of these decisions relate to original entries of land, but we think there should be nearly or quite as much certainty in sales as in original entries or purchases from the sovereign authority.

WESTERN DIS.
September, 1841.

PATIN
vs.
BLAIZE, JR.

It is essential to the validity of an entry that the land intended to be appropriated, should be so described as to give notice of the appropriation to subsequent locators.

We suppose there is not a man in this section of country, if a sale for land lying on the West bank of the East Fork of Plaquemine Brulée, were exhibited to him, would thereby understand, it meant the land lay on the Plaquemine Brulee so near the Mermentou River, as to induce a belief that a deed calling for the West bank of the Nementou included the land in question. The East Fork of the Plaquemine Brulée is well known; it is laid down on the maps of the State and in the public surveys. The Plaquemine Brulée is also well known; but if either Fork is entitled to the name the Bayou takes below the junction of the East and West Forks; it is the latter, as it is the longest and largest stream, and more generally spoken of as Plaquemine Brulée, than the other. We do not intend to be understood as holding, that if a title calls for a small or unknown stream, that it is to control the location, if there be other known boundaries to designate it better; in such a case they should be considered with cotemporaneous circumstances.

In this case we look upon the use of the name East Fork of Plaquemine Brulée as more specifically and particularly designating the place where the land sold should be, than if the name Plaquemine Brulée had been used in the general understanding of that name.

This cause has been twice tried in the District Court, and

WESTERN DIS. September,1841.

Damages for the wrongful suing out an injunction may be claimed in the same suit, under the provisions of the act of 1831, in cases embraced by this act; but from its wording it seems to apply particularly where judgments are enjoined.

two judges have decided in favor of the defendant, we cannot say they erred.

The defendant has asked us to assess the damages claimed in his plea of reconvention. This we cannot do in this action. It was held in the case of Morgan vs. Driggs, &c.; 17 La. Rep. 176; that damages for the wrongful suing out of an injunction may be claimed in the same suit, under the provisions of the act of 1831, in cases embraced by it, but from its wording it seems to apply particularly where judgments are enjoined. The party must therefore take his remedy on the injunction or sequestration bond. Independent of this objection it does not appear the court below decided on the demand in reconvention in any manner.

The judgment of the District Court is therefore affirmed with costs.