## DANIEL TREADWELL WALDEN *v.* THE CITY BANK OF NEW ORLEANS.

By the laws of this state, a contract tainted with usury, is voidable only as to the usurious interest, and valid as to the principal

An offer of restitution must be proved, to maintain an action of rescission.

Sect. 3 of the act of 25th March, 1831, authorizing the court, in case of the dissolution of an injunction, to condemn in the same judgment, the plaintiff and his surety, jointly and severally, to pay to the defendant interest on the amount of the judgment and damages, applies only where judgments have been enjoined. In other cases, the defendant must be left to his remedy on the bond.

APPEAL from the District Court of the First District, *Buchanan,* J.   This was an action to rescind a contract of loan, secured by mortgage, entered into by the plaintiff with the City Bank of New Orleans, and, in the mean time, to enjoin the latter from taking any summary measures to enforce its re-payment.   The petition alleges, that the defendants claim to be creditors of the petitioner for upwards of $200,000, for a loan pretended to have been made in good current money, and to hold a mortgage on property of double that value to secure its payment; and that they have threatened to enforce its payment by summary measures.   The petitioner avers that the contract, and acts of mortgage, made in pursuance thereof, are null.   He represents, that, at the suggestion of the President of the City Bank, he applied to that institution for a loan of $200,000, to be secured by mortgage, and to be payable in instalments, at such periods as his income would enable him to do.   That the Bank agreed to make the loan, to be repaid at one, two, three, four, and five years, on the condition that he would deduct therefrom an amount then due by him to the Bank, as well as a discount on the loan at the rate of eight per cent, and take at par in lieu of money, certain bonds of the Second Municipality of New Orleans, held by the Bank.   That the bonds were for $1000 each, and becoming due many years after *the last instalment* of his debt would become due to the Bank, and were then and still continued to be worth in the market only from seventy to eighty cents on the dollar, the Bank itself having received them at twenty per cent discount.   He avers that the contract and acts of mortgage were in violation of the charter of the Bank ; that the consideration was usurious and unlawful, the agreement having been entered into by the Bank for the purpose of obtaining a higher rate of interest than was allowed by its charter; that the statement in the acts that the loan was made in " good current money," was intended to disguise the truth, no money whatever having been received by him ; and that the only consideration for the obligations and mortgages, was the receipt of one hundred and thirty-eight bonds of the Second Municipality, and a credit for the debt then due by him to the Bank.   He alleges that the Bank, contrary to law, charged interest on the bonds from the 1st of June, 1839, till the time of their delivery, at six per cent, though the period was

less than three months. The petitioner concludes by averring that he apprehends that the Bank will proceed by the most summary means known to the law, to enforce the payment of the amount secured by mortgage ; and with a prayer, for an injunction to restrain the defendants from any such proceeding, and for a rescission of the sale.

The defendants excepted to the petition, on the ground that the plaintiff could not claim a rescission of the contract, without having first tendered to them the bonds, with the interest which he had collected on them, and the other evidences of the original debt, the existence of which he had admitted. In case the exception should be overruled, they answered, that the bonds and mortgages were executed by the plaintiff in consideration " of a pre-existing" debt, and of one hundred and thirty-eight bonds of the Second Municipality of New Orleans, endorsed by the defendants ; averred that the contract was not usurious or illegal, nor in violation of the charter of the Bank ; and prayed, that the petition might be dismissed, the injunction dissolved, and for a judgment against the plaintiff and his sureties in the injunction bond, *in solido*, for $20,000, &c.

The injunction was dissolved, and judgment " in pursuance of the act of 1831, against the principal and sureties in the injunction bond, *in solido*, for ten per cent per annum on the amount of the bond, as interest and damages," from which the plaintiff appealed. The exception was subsequently sustained by the court below ; and from a judgment as in case of nonsuit, there was a second appeal.

*Grymes,* for the appellant. 1. This is an action to annul a mortgage given by the plaintiff to the defendants, and the question is, could an injunction properly issue to stay proceedings on the mortgage pending the action to annul it ?

The causes of nullity set forth in the plaintiff's petition are, that the mortgage was taken by the defendants in fraud, and contrary to the express prohibition of law.

On a motion to dissolve an injunction on the face of the petition, all matters alleged are to be taken as true. 8 Mart. N. S. 396. 4 La. 293, 285. 11 Ib. 482. If the facts set forth in the petition be

taken as true, the question is narrowed down to the mere power of the court to award the writ of injunction in such a case.

On general principles a stronger case could not well be propounded, and the legislation and jurisprudence of this state most clearly authorize it. The Code of Practice after enumerating a long list of cases wherein an injunction may be issued, concludes by declaring that, " besides the cases above mentioned, courts of justice may grant injunctions in *all other cases*, where it is necessary to preserve the property in dispute during the pendency of the action, and to prevent one of the parties, during the pendency of the suit, from dilapidating the same, *or from doing* some other *act injurious* to the other party. Art. 303.

This is broad enough to cover any case where the injurious consequences of the act are apparent. Executory process on a mortgage for two hundred thousand dollars must produce great and irreparable injury to the party, and most uselessly too, if the mortgage be null and void.

2. The remedy by injunction is not confined to cases where judgments have been rendered, or process has been already issued. Even on this restricted and narrow ground, the injunction should be sustained in this case.

A mortgage by public and authentic act, importing confession of judgment, is to all intents and purposes a judgment, in every sense of the term. It only requires, for its complete execution, the issuing of the executory process, which is *ex parte* and without notice or citation, as a judgment rendered in court requires the issuing of a *fieri facias*. The last may be injoined, and no distinction can be drawn between the two cases, on principle, convenience, or necessity.

This is an action to annul the mortgage or judgment confessed ; and the execution of the judgment, alleged to be a nullity ought to be stayed while the action is pending. *Gurlick* v. *Reece*, 8 La. 101.

3. If this be not a judgment, which may be enjoined, then the judgment of the District Court, is erroneous for another reason. It not only dissolves the injunction, but proceeds to assess damages against the plaintiff and his sureties on the injunction bond, as in a case within the purview of the act of the 25th of March, 1831. The third section of that act, which gives the power to the court

to assess the damages, is applicable only to cases of injunction to stay proceedings on *judgments*. Such was the opinion of this court after elaborate argument and great deliberation, in the case of *Borie* v. *Borie et al.*, 5 La. 89.

This construction is further strengthened by the third sect. of the act of 1833, passed with reference to the opinion of this court in the case last cited. The operation of this law is, by this act, expressly confined to injunctions to stay proceedings on judgments. The two acts are *in pari materia*, and must be taken together, and so taken, are conclusive on this point. They are acts of great severity, and must be strictly and rigorously construed. *Mc-Millen* v. *Gibson et al.*, 10 La. 519. *Fisk* v. *Hart*, 11 La. 481. If this case be considered as that of a judgment, the injunction ought not to have been dissolved, the facts stated in the petition being taken for true; if not, then the dissolution and judgment against the plaintiff and his sureties is erroneous. Under any view of the case, on the final hearing the injunction must be sustained for part of the sum demanded, and, consequently, there can be no claim for damages. 11 La. 483.

The judgment on the merits was equally erroneous. The defendants attempt to place the case upon the footing of an application to a court of equity for relief against the payment of usurious interest. This is a palpable error. Were the contract in itself lawful, and relief sought against usurious interest only, a court of equity would only grant relief on certain terms. For the distinction between the case of a lender seeking to enforce a contract unlawful in its nature, and that of a borrower seeking relief from the payment of usurious interest, see 1 Story's Equity, 299, 300, and 301. See also 3 Wendell, 573.

The only question in this case is, whether the mortgage in question was executed in a lawful manner for a lawful purpose, or is such a contract as can be enforced in a court of justice? On this point, see *Astor* v. *Price*, 7 Mart. N. S. 408. It is clearly prohibited by the 6th and 18th sec. of the charter of the Bank. All contracts against law are void. Civ. Code, arts. 1757, 1772, 1885–7, 1889, 1890, 1895, 2015. *Milne* v. *Davidson*, 5 Mart. N. S. 409. The whole matter is ably discussed, and the principles of law clearly laid down by the Supreme Court of the United States, in the

case of *The Bank of the United States* v. *Owens et al.*, a case exactly like the present.   2 Peters, 527.   See also 17 Mass. 257. 4 Peters, 410.   9 Ib. 378.

The amount for which the plaintiff may be bound, is not now before the court.   When the defendant shall think proper to pursue his claim in a proper shape, the inquiry will then properly .arise.   The only question under the pleadings in this case, as it now stands, is the validity of the mortgage.

*Lockett, Micou,* and *L. Peirce,* for the defendants.   A party demanding the rescission of a contract, must return, or offer to return the consideration received by him.   The plaintiff's demand is one, which in countries governed by the common law of England, could only be heard in a court of equity.   It is a settled principle in those courts, that relief will never be extended to a party against his own contract, without exacting from him strict justice to his adversary.   In *Morgan* v. *Schermerhorn*, 3 Paige's Ch. Rep. 546, Walworth, Chancellor, says : " As a general rule, a party who comes here to seek relief against an usurious contract, must pay, or offer to pay the amount actually due, before he will be entitled to an *injunction,* or to an *answer* to the alleged usury."   See *Livingston* v. *Harris*, 3 Ib. 532.   *Fanning* v. *Dunham,* 5 Johns. Ch. R. 142.   *Beach* v. *Fulton Bank,* 3 Wendell, 584.   Vernon, 170, 173.   *Fitzroy* v. *Gwillim,* 1 Term Rep. 154. *Mason* v. *Gardner,* 1 Fonblanque's Equity, 25.   *Vent* v. *Osgood,* 19 Pickering, 577.

All our courts are courts of equity.   The Code enjoins them, " in the absence of express legislation to proceed and decide according to equity," (art. 21) ; and equity is declared to be " founded in the christian principle not to do unto others that which we would not wish others should do unto us, and on the moral maxim of the law, that no one ought to enrich himself at the expense of another."   Art. 1960.

The return or tender of the consideration received by the plaintiff, is a condition precedent to his right to be heard, and as his petition does not allege that he has returned the consideration, and does not tender now to return it, it contains no cause of action, nor ground for injunction.

A distinction has been attempted to be drawn between a con-

tract for usurious interest made by an individual, and a contract, by a corporation, for a higher rate of interest than its charter allows. This distinction is urged upon the ground that a corporation is the creature of the law; that it has and can exercise no powers, save those expressly conferred by the law which creates it; and that any act, or contract in which it exceeds the strict letter of its charter, is absolutely void.

It is true that the powers of a corporation are limited by the law which creates it, and that it cannot contract in reference to objects not contemplated by its charter. But in reference to all subjects within the scope of the powers granted to it, and of the purposes for which it was created, it may act and contract precisely like a natural person; in reference to those powers, and in the accomplishment of those purposes, its acts are judged by the same rules, guarded by the same sanctions, and liable to the same penalties, as the acts of individuals in similar cases, and to none other.

Blackstone speaks of corporations as "artificial persons." Chancellor Kent defines them to be "bodies politic," acting in several respects as a "single individual." Our own Code says, that a corporation is "an intellectual body, created by law," and "which for certain purposes is considered as a natural person." When established, "they are substituted for persons," and the enumeration of their powers, in article 424, shows, that with respect to the objects of their association, their rights and privileges are identical with the rights of natural persons over the same objects.

Corporations are subject to the general laws of the land. All laws regulating contracts and rights of property—in short all laws save those, *ratione materiæ*, inapplicable to the nature of corporations, apply as well to them as to natural persons. Angell & Ames, p. 142. If then a corporation be permitted by its charter to buy and sell, it may buy and sell every thing which may be bought or sold by a natural person.

By the Civil Code, art. 2895, "legal interest is fixed at the following rates, to wit: at five per cent, on all sums, which are the subject of a judicial demand, whence this is called judicial interest.

"And on sums discounted by banks, at the rate established by their charters.

"The amount of conventional interest cannot exceed ten per cent."

The charter of the City Bank provides, that it "may discount notes at a rate of interest not exceeding eight per cent."

The language of the law, in reference to individuals and to corporations, is then the same. Both are simply forbidden to exceed a prescribed rate.

The consequences of a violation of the law must be the same in either case. Corporations may be restricted in the exercise of certain rights, and extraordinary penalties may be denounced against them, either by the general law, or by their charters. The law might enact that a certain contract, if made by a corporation, should be null; it might withhold the infliction of such a penalty, upon a similar contract, by an individual. But if the law has made no such distinction, the courts have no power to make it.

The cases relied on by the counsel for the plaintiff draw no such distinction as he has contended for. The case of the *Bank of the United States* v. *Owens*, 2 Peters, decides simply the point, that a contract prohibited by law will not be enforced. The learned judge, in citing his numerous authorities, urges only this general proposition. His object was to establish that the prohibitions of the law will be as strictly enforced as those of morals; that no difference will be recognized in a court of justice, between *malum in se* and *malum prohibitum*. The same remarks are applicable to the opinions delivered in the case of *Craig* v. *The State of Missouri*, 4 Peters, and *Armstrong* v. *Toler*, 11 Wheaton.

The distinction is unfounded. The alleged violation of the charter consists in the reservation of a rate of interest exceeding eight per cent. A similar violation of the law by an individual would be denominated usury.

As to the alleged usurious character of the contract. It is not pretended that the contract was usurious on its face; the plaintiff relies on a secret illegality, covered by a contract valid in form. It is then incumbent on him to prove the violation of the law, and the intention to violate it. Neither will be presumed by the courts. *Lloyd* v *Scott*, 4 Peters, 224. "It is an admitted principle, that

the courts will not presume a contract usurious, without satisfactory proof." 1 Wash. 368. Where, indeed, the contract upon its very face imports usury, as by an express reservation of more than legal interest, there is no room for presumption; for the intent is apparent; *res ipsa loquitur*. But where the contract is, on its face, for legal interest only, then it must be proved that there was some corrupt agreement, or device, or shift, to cover usury; and that it was in the full contemplation of the parties. These distinctions are laid down and recognized so early as the cases of *Button* v. *Downham*, Cro. Eliz. 642; *Bedingfield* v. *Ashley*, Ib. 741; *Roberts* v. *Tremayne*, Cro. Jac. 507. The same doctrine has been acted upon in modern times, as in *Murray* v. *Harding*, 2 W. Bla. 859; where Gould, Justice, said that the ground and foundation of all usurious contracts is the corrupt agreement; in *Hoger* v. *Edwards*, Cowp. 112; in *Hammel* v. *Fea*, 1 Bos. & Pull. 144; in *Doe* v. *Booch*, 3 Barn. & Ald. 664; and in *Solarte* v. *Melville*, 7 B. & Cress. 431.

"The principle would seem to apply to the prohibition in the charter of the Bank. There must be an intent to take an illegal interest, or, in the language of the law, a corrupt agreement to take it, in violation of the charter; and so it was stated in the plea in the case of *The Bank of the United States* v. *Owens*, 2 Peters, 527. The *quo animo* is therefore an essential ingredient in all cases of this sort." Story, J. *Bank of the United States* v. *Waggener et al.*, 9 Peters, 399.

Testimony was offered to prove that the current value of the bonds was below par; conceding this to have been the case, (though the contrary is established,) it does not follow that the loan was usurious. "If the application," says Story, J., "be not for a loan of money, but for an exchange of credits or commodities, which the parties, *bona fide*, estimate of equivalent values, it seems difficult to find any ground on which to rest a legal objection to the transaction. Because an article is depreciated in the market, it does not follow that the owner is not entitled to demand or require a higher price for it, before he consents to part with it. He may possess bank notes, which to him are of par value, because he can enforce payment thereof, and for many purposes they may pass current at par, in payment of his own debts, or in

payment of public taxes, and yet their marketable value may be far less. If he uses no disguise—if he seeks not to cover a loan of money under the pretence of a sale or exchange of them, but the transaction is, *bona fide*, what it purports to be, the law will not set aside the contract, for it is no violation of any public policy against usury." *Bank of the United States* v. *Waggener et al.*, 9 Peters, 401.

And in conformity with these views, the court decided that the discount of Owens' note by the United States Bank, in notes of the Bank of Kentucky, when these notes were at a depreciation of from 33 to 40 per centum, was not necessarily usurious or illegal.

The proof of illegality must then be sought for elsewhere in the record. " Such an exchange," says the court in the same case, " is not *per se* illegal, though it may be so, if it is a mere shift or device to cover usury." The evidence shows that there was no such illegality in this case.

In England, and in some of the United States, usury avoids the whole contract. The penalty is expressly imposed by statutes. 2 Peters, 538. In the learned opinion of Judge Porter, pronounced in the case of *Hermann* v. *Sprigg*, 3 Mart. N. S. 191, the Spanish law on the subject is ably collated. That law declares that " contracts and public acts in which usury intervenes, are null." The construction placed upon it by the courts, and adopted by the judge in the case cited, was, that the contract for the interest only was void, and that the principal, the actual amount of the loan, might be recovered.

But the Spanish law has been repealed. Neither our Code, nor any statute in force, pronounces an usurious contract void, or imposes any penalty upon the reservation of illegal interest. The law now simply declares, that the rate of conventional interest shall not exceed ten per cent, and the rate of bank interest, that prescribed by the charter. Up to the limit prescribed by law, the contract is good—void for the excess. And so has this court decided in the case of *Millaudon* v. *Arnaud*, 4 La. 545. " The laws of Spain which affixed, as a penalty for lending money at a higher rate than that permitted by law, the loss of *the whole of the interest stipulated for*, have been repealed, and the decisions

of the court, under those laws, can have no application to a case arising under the provisions of our Code. If, therefore, we come to the conclusion that the charge of two and one-half per centum for acceptance was usurious, we could only *reject* that item. The agreement to pay ten per centum interest would be unaffected by it."

In the case of *D'Aquin* v. *Coiron*, 3 La. 393, and *Millaudon* v. *Flower*, 6 La. 707, the rule of the Spanish law was applied by the court, because in both cases the contracts in question had been made before the repeal of the Spanish law. The case in 4 La. already cited, has never been overruled. The opinion was pronounced by Judge Porter, who had before so thoroughly examined the Spanish laws on the subject, and may be considered the law of Louisiana.

By the ancient Roman law, usury was punished more rigorously than theft. By the French law, the usurer was punished for the first time by a public and ignominious acknowledgment of his offence, and was banished. His second offence was capital, and he was to be hanged. By the common and statute laws of England, usury was an indictable offence, and fine, forfeiture, outlawry, and escheats were inflicted upon the offenders. Ord on Usury, 6. But none of these laws have been adopted into our system. Our courts consider the limit of interest a question of public policy only, not a question of ethics. They have decided that money paid for usury was paid under a natural obligation, and cannot be recovered back either by suit or by exception. *Perillat* v. *Peuch*, 2 La. 431. *Merchants' Bank* v. *Gove*, 15 La. 378.

The suit of the *Bank of the United States* v. *Owens*, originated in a State by whose laws usury avoided the whole contract. The decision was pronounced by a judge educated under the common law, and accustomed to regard usury as a legal, if not a moral offence. The demurrer by which the question was presented, admitted the violation of the law, and an unlawful and usurious intention. The usury was set up by a defendant, and not by a plaintiff—as a shield, and not as a sword. Such a decision can scarce be a guide under our Code and decisions, under a system derived from the Spanish law, and in a case where the position of the parties is reversed.

The plaintiff cannot be relieved from his contract, under the pretence that the Bank has violated its charter. A charter is something more than a law—it is a contract. The State and the stockholders are the parties to it. They have rights under it, which cannot be infringed or annulled, directly or indirectly, by strangers. Were it otherwise, the object of the grant of the franchise would be defeated. The rights of the State would be at the mercy of private speculation and cupidity. The plaintiff is not the guardian of the rights of the State. He has no mandate to punish a violation of the charter, which may be pardoned or may be prosecuted only by the State.

In the case of the *Chester Glass Company* v. *Dewey*, 16 Mass. Rep. 412, Chief Justice Parker decided that a man purchasing goods of a corporation, cannot, when sued for the price, allege that the charter did not authorize the corporation to trade. "The defendant cannot refuse payment on this ground ; but the legislature may enforce the prohibition, by causing the charter to be revoked, when they shall determine that it has been abused."

In the case of the *Bank of the United States* v. *Fleckner*, 8 Wheaton, 355, the court say : "The taking of interest beyond the sum allowed, would doubtless be a violation of the charter, for which a remedy might be applied by the government ; but as the act of Congress does not declare that it shall avoid the contract, it is not perceived how the defendant could avail himself of it to defeat a recovery." See Angell & Ames 510. 2 Kent's Com. 212.

In an action by a corporation, the defendant cannot show that it has forfeited its corporate rights. The forfeiture can be taken advantage of in no other way than by a suit in behalf of the people. Until it has been judicially ·declared in this form, individuals cannot avail themselves of it. *Trustees of Vernon* v. *Hill*, 6 Cowen, 23.

"The defendant contracted with plaintiffs in their corporate name ; he thereby admits them to be duly constituted a body politic," &c. "It would be a violation of all common sense and justice, to permit him now to set up that no corporation ever existed." *All Saints' Church* v. *Lovitt*, 1 Hall R. 198.

And so in the case of the *Atchafalaya Bank* v. *Dawson*, 13 La.

this court expressly denied to the defendant the right to avail himself of the forfeiture of the charter, until such forfeiture had been demanded by the State which alone was competent to require it. There is no difference in principle between that case and the one now before the court. In that case, the plea was that the corporation had ceased to exist, and was incompetent to sue or contract, by reason of the violation of its charter. Here the plaintiff says that the contract is void, because the Bank has violated its charter.

The injunction was properly dissolved, and the exception properly sustained.

BULLARD, J. Two appeals are before us in this case; the first from a judgment dissolving an injunction granted at the inception of the suit, and the second from a judgment of nonsuit, rendered upon sustaining a peremptory exception. Our attention, for the present, will be confined to the last; for, if the exception is to be sustained, the injunction falls as a necessary consequence.

The action was brought, to cause to be annulled and rescinded, a contract of loan, secured by mortgage, on the allegations; That the contract was contrary to, and in violation of the charter of the City Bank, it having been entered into with a view to obtain a higher rate of interest than the charter permitted, and was, consequently, usurious. That, although it is stated in the written contract, that the loan was made in good current money, yet that, in truth, no money was given, but one hundred and thirty-eight bonds of the Second Municipality of New Orleans, of one thousand dollars each, were given to the plaintiff, which, together with a debt previously due by him, formed the only consideration of the mortgage; and that said bonds were given to disguise the profits made by the Bank. That the bonds were taken at par, although greatly depreciated, and that the Bank had paid the Municipality only at the rate of $800 for a $1000. The plaintiff, on these allegations, avers the nullity of the contract and the mortgage. He, therefore, prays for a judgment declaring null and void the contract and written obligations, and for general relief; and for an injunction to restrain the City Bank from proceeding, *pendente lite*, to enforce their mortgage.

The defendants filed a peremptory exception in the nature of a

demurrer, to wit, that the petition contains no cause of action against the Bank ; and that the plaintiff has no right in law to demand that the several bonds and mortgages referred to in his petition should be rescinded, or declared null and void, without returning or offering to return to the defendants, the one hundred and thirty-eight bonds of the Second Municipality, with all the interest collected on the same, and the several pre-existing evidences of debt and acts of mortgage, which, by the confession of the petition, the said Walden received from the defendants, in consideration of the bonds and mortgages now alleged by him to be void.

This exception presents the question, whether, admitting as true all the allegations in the petition, the plaintiff has shown a sufficient cause of action, and has entitled himself to a rescission of his contract with the Bank.

The charge is, substantially, that having effected a loan of the Bank, the plaintiff was induced to take a large part of the sum, to wit, $138,000, in bonds of the Second Municipality, at par, bearing interest at six per cent, in lieu of money ; and that the Bank had taken the same bonds at a discount of twenty per cent, thereby making a profit of more than eight per cent, the rate of interest and discount allowed by their charter, contrary to the charter itself.

It is not pretended that the transaction is tainted with fraud, nor that there was any material error or want of consent. The only ground of nullity alleged is, that the plaintiff took, at par, certain stocks then depreciated in value, and that the contract was usurious.

If this were an action against an individual, instead of a bank, we do not see upon what ground the plaintiff could hope for relief ; for, even admitting that the contract was usurious, it would not follow that it could be annulled *in toto*. In this respect our law is supposed to differ from that of the states governed by the common law. Here the contract is voidable, only so far as it concerns the interest, and is valid for the principal. The argument, therefore, that the contract is null, because prohibited by law, is not sound ; because the prohibition goes to the usury only, and not to the sale of the stocks, with a warranty by endorsement. It is not alleged in the pleadings that the Bank is forbidden by its

charter to buy or sell stocks ; but the plaintiff demands that the contract should be wholly annulled. The circumstance, therefore, that one of the contracting parties is a bank, does not materially alter the case. Even supposing that the exaction, in any case, of usurious interest, contrary to the prohibition of the charter, would amount to a sufficient ground for a forfeiture of the charter, and that an individual has the legal capacity to demand such forfeiture, yet it has not been done in this case. The contracts of banks, so far as they are valid and lawful, like those of individuals, may be enforced by an action at law ; and no law of this state declares the forfeiture of the principal loaned, where a higher rate of interest has been stipulated for, than the law permits.

We have heretofore considered the case in the light most favorable to the plaintiff, to wit, that the contract was tainted with usury. Whether it was so or not, it is not now our duty to pronounce ; because we are called upon to decide upon the exception alone, which denies that the petition discloses any sufficient legal cause for the rescission or nullity of the contract, which the plaintiff seeks to avoid. But it may be remarked, that the bonds of the Second Municipality, which the plaintiff alleges were received by him as cash, are payable many years hence, and bear interest at six per cent, and were endorsed by the Bank. If, at the time of payment, the full amount should not be paid, the Bank is obviously liable, as transferrer, to make up the defalcation ; and if, before their maturity, the plaintiff has chosen to dispose of them, he has not yet any recourse upon the Bank.

It is not alleged that there was any fraud in the transaction, nor does the plaintiff set forth any facts from which such fraud could be inferred as would vitiate the contract, independently of the alleged usury.

But it is further set forth in the exception, that the plaintiff has not made an indispensable averment in the petition, to wit, his readiness and ability to restore the bonds, and the interest received. It is quite manifest that there can be no rescission of a contract, without placing the parties in the situation they were in before the contract was entered into. It would be absurd to rescind a sale, for example, without restoring the price. This principle has been often recognized by this court, in relation to one class of ac-

tions of rescission, perhaps the most frequent in our courts, to wit, those of redhibition. The word itself implies, the replacing of the parties in the position they were in before the contract. It is now settled in this court, that such an action cannot be maintained without an offer to make restitution. 2 Mart. N. S. 466. 4 La. 198. 19 La. 283.

The authorities principally relied on by the counsel for the plaintiff, are drawn from the common law, and are cases under usury laws which make the whole contract void.

The court, in our opinion, did not err in sustaining the exception, and dismissing the suit.

The same reasoning applies to the motion to dissolve the injunction, which was based upon the same grounds.

But the court below erred, in our opinion, in giving judgment against the principal and sureties, on the injunction bond, for damages, according to the act of 1831. The defendants should have been left to their remedy on the bond, inasmuch as the execution of a judgment was not enjoined. *Morgan* v. *Driggs et al.*, 17 La. 176. 19 La. 396.

It is, therefore, ordered and decreed, that the judgment of the District Court, sustaining the exception and dismissing the suit, be affirmed with costs ; but that the judgment dissolving the injunction with costs, be affirmed as to the dissolution, and reversed as to the damages recovered against the plaintiff and his sureties, reserving to the defendants their recourse upon the injunction bond ; and that the costs of the two appeals be paid by the appellees respectively.