### J. LEVOIS *v.* F. GERKE.—ON A RE-HEARING.

The 6th section of the Act of the 29th of March, 1826, (session Acts, p 140) which provides for a sequestration of the property and a meeting of the creditors of any merchant or trader who shall abscond or conceal himself in order to avoid the payment of his debts, is still in force.

That law provides for a mode of proceeding different from the one had in view in cases of voluntary and forced surrender, and is not affected by the Acts of 1855 upon those subjects.

APPEAL from the Fifth District Court of New Orleans, *Augustin*, J,
*G. & C. E. Schmidt*, for plaintiffs and appellants. *A. & A. Pitot*, for appellees.

COLE, J. *Levois and others*, creditors of *F. Gerke*, acting under the provisions of the 6th Section of the Act of 29th March, 1826, obtaining a sequestration of all his property, and an order calling all the creditors to a meeting, in order to appoint a syndic and liquidate his affairs.

*Durand, Dortie* and *Lacapere*, creditors of *Gerke*, who had obtained an attachment against his property, intervened in the proceedings, and in their

capacity of attaching creditors, whose interests were injured by said proceedings, demanded that the same be set aside and quashed, on the ground, that the 6th section of the law of 1826 had been repealed by the statutes of 1855, relative to insolvency.

LEVOIS
v.
GERKE.

The demand of the intervenors was sustained by judgment of the court below, and the plaintiffs now seek to have the said judgment reversed, on the ground, that the said 6th section is still in force, and this is the principal question for our present consideration.

The 6th section of the Act of 29th March, 1826, entitled "An Act supplementary to an Act entitled 'An Act relative to the voluntary surrender of property, and to the mode of proceeding, as well for the direction, as for the disposal of debtors' estates, and for other purposes,'" reads as follows:

"That if any merchant or trader abscond or conceal himself, in order to avoid the payment of his debts, it shall be lawful for three of his creditors or more to apply to any competent Judge, and after having made an affidavit, that the said merchant or trader has actually absconded or concealed himself, in order to avoid the payment of his debts or to be sued therefor, as well as of the specific amount of their respective claims, to obtain from the said Judge an order authorizing the sequestration of the property of the said merchant or trader, and that his creditors may be called to appoint syndics, who shall be put by the Judge in possession of the property of said merchant or trader, as by way of forced surrender; and, in such case, all the other formalities and rules prescribed by law, in matter of voluntary surrender of property, shall be complied with."

At the time this statute was enacted, no law existed in Louisiana which empowered the creditors of a debtor who had fled from the State to seize his property and distribute it ratably among the mass of his creditors, and to carry into force, as to him, the provisions of the 3510 Art. of the Civil Code, which is as follows: "The property of the debtor is the common pledge of his creditors, and the proceeds of its sale must be distributed among them ratably, unless there exists among the creditors some lawful causes of preference."

Anterior to the enactment of this statute, a debtor could secretly leave the State, and some favored creditors could attach his property and obtain a privilege by the attachment before the other creditors were even cognizant of his departure.

This statute was then indispensable for the safety of the commercial community, and supplied a void in the legislation of the State.

It provided for the disposal of the estates of debtors who had absconded, a mode different from, and independent of, the laws then in force for forced and voluntary surrenders.

The laws then in vigor for forced surrenders required, as an indispensable requisite for a forced surrender, that the debtor shall be in actual custody.

The laws then in force for a voluntary surrender required, among other formalities, that the debtor should present a petition to a competent court, praying for a call of his creditors."

Section 6 provides a new mode of proceeding against a different class of debtors from the laws then in vigor for a forced or voluntary surrender.

It is true, that this section authorizes proceedings as *by way of forced surrender* and *voluntary surrender;* but, as it authorizes to proceed partly by

LEVOIS
v.
GERKE.

forced and partly by voluntary surrender, this shows that the Legislature contemplated a mode for disposing of the property of debtors who had absconded or concealed themselves, entirely distinct from the remedies then in being.

It should also be remembered, that under the Constitution of 1812, laws were not enacted distinctly with a title for each, but laws upon many distinct subjects were embraced under the same general title.

By reference to the Act approved March 29th, 1826, it will be found, that sections 7 and 8 apply to successions; these sections are not, however, repealed by the repealing clause in the Acts of 1855, relative to insolvent laws, because they are not upon the same subject-matter, and there is nothing therein inconsistent with them.

Inasmuch as the insolvent laws of 1855 do not embrace the class of debtors referred to in section 6th of the Act of 1826, and as the subject-matter of the Acts in question of 1855 are voluntary and forced surrenders, and as said sec· tion 6th provides a mode different from either species of surrenders, and constitutes a distinct remedy, and as there is nothing in the laws of 1855 relative to insolvency which clashes with the provisions of this section, we are of opinion that it is not repealed by the repealing clause in those laws.

It is not now the time to decide on the rank of the attaching creditors or of those who have sued out the writ of sequestration; the rank and priority ·of the different creditors will be fixed during the proceedings under the 6th section of the Act of 1826.

It is, therefore, ordered, adjudged and decreed, that the former judgment of this court in this case be set aside, and that the judgment of the lower court on the rule be avoided and reversed, and the rule be dismissed, and intervenors pay the costs of both courts.

MERRICK, C. J., dissenting.  The putting of the creditors in the possession of the goods of the debtor who absconded or secreted himself to avoid the pursuits of his creditors, is nothing peculiar to modern times.  It was recognized by Justinian as to those who, having given surety, concealed themselves, and in a certain manner by the former laws of the country when the debtor fled. Dig. Lib. 42; F. 4 Legis 2 and 7; Partidas 5, Tit. 14, Law 10 ; See also Mackeldey Parte Speciale, §767, No. 3, C.

The Code of 1808 as well as the Code of 1825 recognized two kinds of surrender, forced and voluntary.  They are defined as follows :

"The voluntary surrender of property is that which is made at the desire of the creditor himself."

"And the forced surrender is that which *is ordered* at the instance of the debtor's creditors or some of them, in cases provided by law."

Both of these kinds of surrender are "subject to formalities which are prescribed by special laws."  Code 1808, p. 294, Arts. 168 and 169 ; Civil Code, 2168, 2169.

These two kinds of surrender have been treated as the two divisions of the subject by the lawgiver ever since the promulgation of the Codes.

The sixth section of the Act of 1826 in question, putting the creditors in possession of the property of the merchant or trader who absconds or conceals himself, has been treated by the lawgiver as properly coming under the one or the other of these heads ever since the passage of that Act.

It is so treated in the Digests of Moreau, Bullard and Curry and the Digest of 1852, which were published under the legislative sanction.

It is so classed, as I think, in the Act itself, for the title of the Act is "An Act supplementary to an Act entitled 'An Act relative to the voluntary surrender of property and to the mode of proceeding, as well for the direction as for the disposal of debtors' estates, amd for other purposes.'" The first six sections of the Act, including the one in question, treat of the surrender of property to the creditors where the debtor is living. The seventh section relates to insolvent successions where no one will accept the administration, and whether this section is or is not repealed, it does not appear to me materially to affect the argument. It is evident, that the Legislature, by the sixth section, intended for the causes mentioned to authorize three of the creditors to obtain *an order* for the surrender of the property of the debtor. The surrender was not, therefore, voluntary, and must fall under the other division indicated by the Code, viz : the "surrender which *is ordered* at the instance of the debtor's creditors" Judge Porter said, in a case arising under the old law, in the case of *Ward* v. *Brandt*, that :

"The failing circumstances already alluded to " (in cases where courts were authorized to decree a forced surrender) "are those cases where the debtor who is a *trader or merchant conceals his person* or his property from his creditors with an intention to defraud them, or *who absconds*, taking with him his effects and books of account ; or is unable to pay all his debts ; or who applies for a respite ; or to have the benefit of these laws made for the relief of insolvent debtors ; or against whom execution has issued ; or who fails to discharge his debts as they become due."

" In all these cases that proceeding which our law contemplated by the expression 'forced surrender' *may be ordered:* the creditors may apply that a concurso be formed ; that syndics be appointed; that the property be sequestered and applied to the common benefit, and that the debtor, if he conceal his effects, be imprisoned until he makes a full and fair disclosure respecting them." 9 M. R., 636.

It seems to me, therefore, that a fair construction of the sixth section of the Act of 1826, both by reference to the Act itself, the former legislation, the decisions of this court, and the legislative action since the statute was passed, requires that it should be classed under the head of forced surrender. But all laws on the subject-matter of both voluntary and forced surrenders, except what is contained in the Civil Code, the Code of Practice, and the two statutes of 1855, are repealed. Acts 1855, 319, sec. 4; 438, sec. 36.

And on the subject of the legislation of 1855 we have held, that the object was to furnish in one body all the law on the subject-matter treated of in each Act, so that, in order to know what the law is on that subject one would not be compelled to look beyond the Act itself. I see, therefore, no good reason to change the judgment heretofore pronounced by this court.

VOORHIES, J., concurs in this opinion.

---

OVERRULED OPINIONS.

VOORHIES, J. This is an action brought by the plaintiffs against the defendant, an absconding debtor, for a forced surrender of his property, in accordance with the 6th section of the Act of the 29th of March, 1826, entited " An Act supplementary to an Act entitled an Act relative to the voluntary surrender of property, and to the mode of proceeding, as well for the direction as for the disposal of debtors' estates, and for other purposes." A writ of sequestration was issued as prayed for. The Sheriff's return thereon shows, that all the property belonging to the defendant had already been seized by him under a writ of attachment sued out by *Durand, Dortie* and *Lacapere*.

LEVOIS
*v.*
GERKE.

On the execution of the sequestration, *Durand, Dortie* and *Lacapere,* the attaching creditors, took a rule upon the plaintiffs to show cause why the proceedings in the present case should not be dismissed, on the ground of being illegal and unauthorized by law.

In support of the rule it is urged, that the section above quoted, on which the plaintiffs' action is based, was virtually repealed by the statutes of 1855.

The Acts of 1817 and 1826, relative to the voluntary surrender of property, exclusive of that section were consolidated in the Act entitled "An Act relative to the voluntary surrender of property and mode of proceeding," approved the 15th of March, 1855. The 36th section of this Act expressly declares all laws contrary to its provisions, *and all laws upon the same subject-matter,* except what is contained in the Civil Code and the Code of Practice. That section, it is evident, was properly excluded from this Act, even if still in force, as inapplicable to the voluntary surrender. All the Acts in relation to forced surrenders were consolidated in the Act entitled "An Act relative to forced surrenders and the mode of making the same," approved March 14th, 1855. The last section of this Act also contains the repealing clause of all laws contrary to its provisions, *all laws upon the same subject-matter,* except what is contained in the Civil Code and the Code of Practice. The 6th section of the Act of 1826, which clearly applied only to forced surrenders, was not embraced in this Act. As it was upon the same subject-matter, namely : forced surrenders, it was thereupon expressly repealed. That such was the clear intention of the lawmaker, we think also results from the fact that all the statutes considered in force at the time were re-enacted in 1855, as the Revised Statutes of the State. Session Acts of 1855, 318 & 432; 11 A. 439. As the repeal of that section leaves the plaintiffs' action without any legal foundation, it is clear, therefore, that the other grounds of defence which they have urged cannot avail them. The law authorizes persons whose interests may be affected by a suit pending between other parties to intervene in such suit and join one of the parties or oppose both. Code of Practice, Art. 389 & 392, as amended by the Act of 1836. We are therefore of opinion, that the rule was properly taken to set aside the proceedings in this case. The claim of *Durand, Dortie* and *Lacapere* against the defendant *Gerke,* appears to us to be fully sustained by the evidence. Moreover, it could not be contested by defendants in the rule. 1 L. 431 ; 8 L. 54.

It is, therefore, ordered, that the judgment of the court below be affirmed, with costs.

SPOFFORD, J., dissenting. The 6th section of the Act of 29th March, 1826, (p. 140) supplied a *casus omissus* in the previous laws.

Provision had been made for voluntary surrenders by insolvents; provision had also been made for obliging contumacious debtors, *within reach of process,* to pay their debts or make a surrender.

But the case of a debtor who absconded or concealed himself had not been thought of; he could not be reached by any existing remedies. Such a debtor would not, of course, make a voluntary surrender ; and he could not be forced to make a surrender, because he could not be cited. The evil to be remedied was found to spring chiefly from transient merchants and traders. A new law upon a new subject was therefore enacted; it was declared that " if any *merchant* or *trader* abscond or conceal himself, in order to avoid the payment of his debts, it shall be lawful for three of his creditors or more, to apply to any competent Judge, and, after having made an affidavit that the said merchant or trader has actually absconded or concealed himself, in order to avoid the payment of his debts, or to be sued therefor, as well as of the specific amount of their respective claims, to obtain from the said Judge an order authorizing the sequestration of the property of the said merchant or trader, and that his creditors may be called to appoint syndics, who shall be put by the Judge in possession of the property of the said merchant or trader, *as by way of* forced surrender, and that in such case, all the other formalities and rules prescribed by law in voluntary surrender of property, shall be complied with."

This is simply a provision for the judicial sequestration and distribution of the property of absconding or concealed merchants and traders, who have not paid their debts, who will not make a voluntary surrender, and who cannot be forced to make a surrender.

Plainly, therefore, such proceedings cannot be called voluntary surrenders, nor forced surrenders. There is no surrender at all. There is a sequestration of property and a distribution of it among those whose common pledge it is, without the assent or dissent of the owner, who is not to be notified at all. Nor did the Legislature speak so loosely as to call it either a voluntary or a forced surrender. One step was to be taken " *as by way of* a forced surrender," and others *as* in voluntary surrenders."

Now, in revising the statutes in 1855, two Acts were passed, one entitled " An Act relative to forced surrenders and the mode of making the same " (Sess. Acts, p. 318); the other entitled " An Act relative to the voluntary surrender of property and mode of proceeding, (Sess. Acts, p. 432). The case before us does not fall within the meaning of either of these *titles.* This however is a minor consideration ; what is of far deeper significance, it is not provided for, or in any way alluded to, in any section of either Act. So far as these two Acts go, the case of an absconding or concealed merchant or trader, or an insolvent who cannot be reached by process and will not appear, is a *casus omissus,* as it was before the adoption of the 6th section of the Act of 1826. The provisions of that section are in no wise inconsistent with the two Acts of 1855; therefore there is no implied repeal; as we have seen, they are not upon the same subject-matter, therefore, they are not expressly repealed. In the case of *Holmes* v. *Wiltz,* 11 An., 439, we held that the repealing clause only swept away such anterior legislation upon the matter *specifically treated of* in the new legislation as was not retained in the latter. In *Stafford* v. *His Creditors* the new law treated specifically of the penalty for a fraudulent bankruptcy, and we held that so much of the old law *concerning this penalty* as was not retained in the new, was repealed. It seems to me that the present case does not fall within the doctrine of either decision. On the contrary, I think the doctrine of both, carried to its legitimate consequences, must lead to the conclusion that the 6th section of the Act of 29th March, 1826, is still in force ; and such is my opinion.

BUCHANAN, J. I concur with Mr. Justice Spofford, as to the effect of the repealing clause in the Acts of 1855. His opinion on that point seems to me to conform to the interpretation which we adopted in the case of *Holmes* v. *Wiltz.*

The sequestration of an absconding merchant or trader's effects at the instance of three of his creditors, under the sixth section of the Act of 1826, is not, in the terms of the statute, a forced surrender ; and it is clearly not a voluntary surrender. There is nothing in the statute, that I can perceive, which gives a greater right to the plaintiffs in such a proceeding than the plaintiffs in any other sequestration would have. I am, therefore, of opinion, that the attachment previously levied upon the defendant's property at the instance of the appellees, could not be affected by the subsequent sequestration of the plaintiffs ; and that the judgment should be affirmed so far as to dissolve plaintiffs' sequestration of the property previously attached by appellees.