## No. 153.

### J. M. CINTAT *v.* J. B. CIER.

A plaintiff levying by *fi fa* upon a judgment before the delays for suspensive appeal have elapsed is liable in damages for such injury (*as may be*) caused when the party against whom the *fi fa* is issued takes a suspensive appeal within the delay allowed and duly notifies the plaintiff.

A judgment against a principal is not necessarily *res adjudicata* against his surety.

Special defenses must be specially pleaded.

A party may be permitted for the purpose of testing the memory of a witness, or disclosing motive, etc., to elicit facts not pertinent to the issues of the case, but he cannot use this as a pretext to enlarge his pleadings.

A payment of a judgment made under protest, is not an acquiescence therein.

*B. K. Miller, A. L. Tucker,* attorneys.

*Sambola & Ducros, J. S. Tully*, attorneys.

His Honor Judge Frank McGloin delivered the opinion and decree of the court in the words and figures following, to wit;

Plaintiff sues for the restitution of money paid under protest, to satisfy an unlawful writ of *fi fa*, and for damages for the seizure of his property. The claim for damages is advanced for interference with business and possession, injury to feelings, and reputation, loss of time and profit; cost, expenses and attorneys fees.

The petitioner was surety upon a bond upon which an injunction issued against defendant. In the course of that litigation, a judgment was rendered against the present plaintiff and his principal on this *in solido*. Both the condemned appealed, Cintat suspensively, the other devolutively.

In the meantime, to wit, on May 18, 1880, on that judgment Cier had issued execution and levied a seizure against Cintat May 29, 1880. The suspensive appeal had been granted to the latter upon his petition, on June 4th. 1880, and Cier duly notified.

Instead, however, of withdrawing the seizure he had made, upon notification of the appeal, the defendant persisted in its enforcement. Meanwhile he presented his motion to dismiss both appeals, in which he prevailed as to the principal upon the injunction bond, but failed as to Cintat. Not even during the pendency of this motion to dismiss, did the plaintiff in that writ, stay its course. On the contrary, he continued to force it forward, appropriating under his seizure, the receipts of the business, causing appraisement and advertisement of the property and evidently intending to effect a sale, unless the writ were discharged or stayed by judicial process. At the last moment, however, Cintat paid the amount, but under protest, and subsequently the Supreme Court reversed the judgment against him and remanded the cause.

Defendant pleads by way of exception, *lis pendens*, setting up as supportive of the plea, original litigation in the courts of which the judgment against Cintat was rendered. He con-

tends that the question of law and fact involved in this controversy, are involved in that, and the final decree in that suit would serve to support the plea of *res adjudicata* as a defense in this. He cites Dick vs. Giliner, 5 La. Ann. 520; Bischoff vs. Theurer, 8 La. Ann. 15, 16, and other authorities.

These we do not consider applicable. The questions involved in this controversy is not that of indebtedness, *vel non;* and in that case, as to Cintat, the question is that and nothing else. The plaintiff in this action does not ask the court to declare that he is not indebted under the bond of injunction, but he does ask it to say that the defendant Cier has attempted to collect it unlawfully and prematurely, even if due at all. What petitioner complains of is that the present defendant, after submitting to the court the question of liability under the bond, he would not suffer the validity of his demand to remain subject to the final determination of the cause. The decree in this case is that the plaintiff merely compel defendant to the status *in quo,* as to the amount collected under the writ of *fi fa,* and to make good damages he has caused by his hasty and illegal execution of the same. We cannot consider the things demanded in these two suits as the same or that there is between them any connection so intimate, so as to involve any conflict or confusion of jurisdiction.

The defendant, on cross examination of the plaintiff Cintat, sought to elicit the fact that said Cintat had received from some party a mortgage note for $250 in part reimbursement of his loss. The questions were objected to, on the grounds of irrelevancy, and the objection was sustained, and exceptions duly reserved. The answer in this case does not aver the fact sought to be established and we consider it in the nature of a special defense, or an affirmative fact which should be set up in pleadings in order to be susceptible of proof.

In the case of Alford's Dettis & Co. vs. Hancock, 1 McGloin 280, we reiterated the principle that the object of pleading is noted. When a party comes into court either to prosecute or defend, he is entitled, in justice, to some warning of what is to be advanced against him. What the pleadings of

the opposition declares, or what may be reasonably inferred therefrom, he may prepare himself to rebut or to combat in law. When, therefore, having come with such due preparation, he is confronted with some other fact of importance, of which he had no express notice or reasonable information, he is in no condition to disprove; and he must either lose time and labor by demanding a continuance or submit the cause, at his peril, to go to the court without a full and fair investigation of this same issue. It is this principle that has led the lawmaker to designate certain defenses like payment, novation, etc., as special and require them to be especially pleaded.

It seems to us, that there can be no material difference, so far as pleadings are concerned, between relying upon a payment, or extinguishment effected by ourselves personally or by another, whose action in such connection has inured to our benefit. Either defense, to be expected by a plaintiff, should be set up in the answer; and there is no reason applicable in one case in justification of the requirement of special defenses which is not equally applicable in the other.

It is well settled that a general denial puts at issue only the facts alleged in the petition of plaintiff and traverses the legal deduction, which a petitioner asks the court to draw from his allegations. No affirmative facts are open to a defendant who has so pleaded except those which tend to disprove the statement of the petitioner, by showing them to be either impossible, or improbable. To hold otherwise, is practically to accord to the words "I deny" the same effect as to the term "I aver", or "I declare".

It is urged that in as much as the plaintiff Cintat was a witness it was a legitimate exercise of the right of cross examination, to propound this question. Reference is made in support of this position to Hall vs. Ship Chieftain, 9 La. 322; Davidson vs. Poydras, 12 La. Ann. 828; Nicholson vs. Desobry, 14 La. Ann. 84.

Perhaps, in cases, upon cross examination, a party may be permitted for the purpose of testing the memory of a witness, or disclosing motive, etc., to elicit facts not pertinent to the

issues of the case, but truly it would be preposterous to maintain that he may, under a pretext of this nature, emancipate himself from all the rules of pleading, and introduce defenses special in their nature or facts which if once admitted, cannot be considered as irrelevant, but must be accorded weight in the determination of the controversy.

It is next contended, by the defendant, that the judgment in the original cause is final against the principal on the injunction bond, and constitutes *res adjudicata* against the surety as well (citing Brashear vs. Cartin 19 La. 396; Keane vs. Fisher, 10 La. Ann. 262; Hair vs. McDade, 10 La. Ann. 535; Gotcschalk vs. Meyer, 28 La. Ann. 886); and that as the debt is judicially established, the debtor Cintat, will not be allowed to retake what, under any circumstances, is but the payment of a just debt. In other words, it is contended that this is but an instance where the rule applies that whatever will support an action, may be advanced by way of defense or exception. Code of Practice Article 20.

Whatever effect a judgment against the principal may have as against the surety, so far as determining the particular issues are concerned, it is certainly not permissible to say that such decree is in every respect the equivalent of one against the surety himself; or that every defense is closed against such surety by the condemnation of this principal. Certainly the one sued as surety may, even after his alleged principal has been adjudged to pay, deny or disprove the signature claimed to be his, show that the debt sued on is not the one which he bound himself, and advance other defenses, in their nature personal to himself.

It cannot therefore be presumed simply because the alleged principal has been condemned, that therefore Cintat must be surety, or if surety that he is bound and has not been discharged. But, even if this judgment was binding on Cintat, we, considering, as will be shown, that the proceeding of Meyer in the enforcement of this writ was wrongful, in violation of express law, could not be permitted thus to take advantage of his own wrong. The provision of law invoked

Cintat vs. Cier.

by defendant in this connection, is but a protection of parties in good faith, and it cannot be invoked to effectuate an act of spoilation. The creditor who has met his debtor upon the highway and extorted the amount of his debt by force, or who has entered his dwelling and abstracted it by stealth, surely would not be heard invoking a rule of law, so equitable as this. The case at bar is not so flagrant as those supposed; but the same principle in one judgment applies to them all.

The amount that the plaintiff paid under the execution was $358.95, which with judicial interest from the date of its unlawful exaction, he is undoubtedly entitled to recover. Consent, such as is known to the law is essential to every valid contract. La. C.C. Art. 1779, 1780, 1798, 1819. This consent to be lawful, must be a concurrence of intentions in two or more persons . . . resulting in each party from a free and deliberate exercise of the will, etc. La. C.C. 1819. Of course, even when under compulsion a person consents, there is exercise of the will, but the law requires more, it must be free and deliberate. La. C.C. 1850, therefore, makes contracts void if the consent be procured by violence or threat; and what constitutes violence or threats, is clearly defined:—"It is not every degree of violence, or every kind of threat that will invalidate a contract; they must be such as would naturally operate on a person of ordinary firmness and inspire a just fear to person, reputation, or fortune. The age, sex, state of health, temper and disposition of the party and other circumstances calculated to give great or less effect to the violence or threat, must be taken into consideration." La. C.C. 1851.

It will be seen that the threat of injury to fortune is placed upon the same footing as a menace to injury to the person. It also appears, that even a reasonable, or just fear of such injury is sufficient to invalidate.

In the case at bar and others similar we have the fortune of plaintiff endangered by an impending alienation, with possible and even probable sacrifice, under forced judicial sale; and we have what seems to have been, under all the circumstances, a certainty of approaching injury and not simply a just fear.

It seems therefore, that when a party finds the machinery of the law brought unlawfully into play against him and his property about to be disposed of by reason of such process, he has a right to yield as in a case of compulsion and satisfy the illegal writ, under protest, as was done in this instance, and in order to avoid a heavier loss. In such a case, the money is not paid voluntarily and the contract is not made with free and deliberate will, and the sum may be recovered.

Upon the question of damages, we also consider the plaintiff entitled to recover. In the original litigation, the judge of the District Court had, upon Cintat's petition granted him a suspensive appeal. The result of this order was, by an express provision of the Code of Practice "to stay execution and all further proceeding, until definitive judgment be rendered on the appeal, etc.," Code of Practice Art. 575.

The plaintiff in that case, defendant in this, cannot plead ignorance of the law, whether the order of appeal was granted inadvertently or not, it was a legal *fiat* given by a judge of competent authority in a cause over which he had unquestioned jurisdiction; and it would be setting a dangerous precedent to permit a party upon whom it bore, to treat such an order as a mere nullity. As well might a pretending creditor, whose executory process has been perpetually enjoined, ignore the adverse decree, and treating the latter as a nullity, proceed to enforce his writ. A person choosing thus to take the law in his own hands does so at his own risk. Should the views which lead him to such a course eventually prevail, he may congratulate himself; but if it be determined that he acted in error he must be prepared to pay the penalty. His conduct was not too justified to stand as a reckless and wanton disregard of the rights of others and in the nature of an offense against the sanctity of the law, and the dignity of the tribunal whose decree has been disrespectfully ignored.

As to the question of damages, we have examined the record and testimony and we are not prepared to say that the judge *a quo* erred in fixing the amount thereof.

Judgment affirmed.